United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG YATES, an individual; and DISABILITY RIGHTS ENFORCEMENT EDUCATION SERVICES: HELPING YOU HELP OTHERS, a California public benefit corporation,<br><br>            Plaintiffs,<br><br>    v.<br><br>BELLI DELI, WILLIAM ROGERS AS TRUSTEE of PEGGY R. VAN ALYEA 1998 TRUST UTD; DONG J. HOMER, and YOUNG B. HOMER, individuals dba BELLI DELI,<br><br>            Defendants.<br>_____/ | No. C 07-01405 WHA<br><br>**ORDER DENYING MOTION TO REQUIRE PRE-FILING REVIEW AND DENYING MOTION TO DISMISS** |

**INTRODUCTION**

In this action under Title III of the Americans with Disabilities Act, defendants move to dismiss this action. First, they ask that plaintiffs be declared vexatious litigants, and that plaintiffs' complaint should be dismissed for being filed for an improper purpose. Defendants also contend that plaintiff Disability Rights Enforcement Education Services lacks organizational standing to bring this complaint. Finally, defendants move to dismiss the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1). Plaintiffs' have filed a large number of Title III complaints, but defendants have failed to show that they were meritless or filed for an improper purpose. The letter sent by plaintiffs' counsel to defendants, however,

1  raises serious ethical concerns, and this matter will be referred to the State Bar.  This order
2  **DENIES** defendants' request to have plaintiffs declared vexatious litigants, but this is without
3  prejudice to reconsidering this issue later in this action.  Defendants have failed to show that
4  DREES lacks organizational standing.  The exercise of supplemental jurisdiction over
5  plaintiffs' state-law claims is appropriate.  Accordingly, defendants' motion to dismiss is
6  **DENIED**.  The Clerk shall forward a copy of this order to the State Bar of California.

## STATEMENT

Plaintiff Craig Yates is a paraplegic who uses a wheelchair to travel about in public (Compl. ¶ 5).  Yates is a member of plaintiff Disability Rights Enforcement Education Services: Helping You Help Others, which describes itself as a nonprofit organization advocating on disability issues (*id*. at ¶ 6).  Defendant Belli Deli is a delicatessen and market in San Rafael, California, owned and operated by defendants William Rogers as trustee of Peggy R. Van Alyea 1998 Trust UTD, Dong J. Homer, and Young B. Homer (*id*. at ¶ 8).

Yates visited Belli Deli on or about August 1, 2006, August 29, 2006, and January 25, 2007 (*id*. at ¶ 14).  On August 1, 2006, Yates had difficulty accessing defendants' store because of alleged architectural barriers.  Yates sent a letter to the landlord and tenants of the building on August 8, 2006 (*id*. at ¶ 17).  He received a response from Julie Van Alyea, the landlord, on August 17, which said that they would be working on the problem (*id*. at ¶ 18).  Yates wrote again on August 28, 2006, and suggested to Van Alyea that three months should be sufficient time to correct the problem (*id*. at ¶ 19).  Van Alyea wrote back on September 6, indicating that remedial measures may start within four to six weeks, but that defendants needed the city to approve the plans before they could start work (*id*. at ¶ 21).  Yates returned to Belli Deli on January 25, 2007, and encountered the same architectural barriers as he had in previous visits (*id*. at ¶ 22).

Yates and DREES filed this action on March 9, 2007, alleging claims for violations of the Americans with Disabilities Act, California Civil Code §§ 54, 54.1, and 54.3, California Health and Safety Code § 19955 *et seq*., and violations of California's Unruh Civil Rights Act.

Thomas E. Frankovich, plaintiffs' counsel, sent a letter to defendants dated April 16, 2006 (Frankovich Decl. Exh. C). The letter informed defendants that they had been served with a summons and complaint and gave an explanation of the nature of the complaint, as well as directing defendants to government resources on disability access (*id*. at 1–2). It also listed some architectural barriers that plaintiffs felt could be addressed or removed within 90 to 180 days (*id*. at 2).

The letter was couched in terms of "friendly advice," and advised defendants that once they retained counsel, plaintiffs could no longer contact them directly. It went on to list some issues that defendants should be aware of, including that the action was filed in federal court, that it sought injunctive relief, compensatory damages, and attorney's fees, and that defendants' insurance policies may not cover all damages (*id*. at 3–4). Plaintiffs also purported to give defendants some helpful hints regarding the desirability of retaining counsel, stating (*id*. at 4–5):

> Defense Billing: Once defense attorneys respond to or answer the Complaint, many, rather than attempt to settle the action, embark on a "billing" exercise. Simply put, some defense attorneys want to sufficiently "bill it" before they get realistic about the settlement. This may cost you [defendants] a significant amount of money that could be better spent on the remedial work and settlement of the action. A monthly itemization of services using six minute or 1/10 of an hour increments is a reasonable request. Keep in mind, the more work your attorneys force on us, the more work we must do. In other words, the litigation can become very costly.

The letter went on to say the "[w]e do not want to see you waste your money on needless litigation." Furthermore, it told defendants (*id*. at 5):

> We hope your accept this letter as friendly advice. We find all too often that many defendants are not properly advised as to their position in the litigation, insurance coverage issues, injunctive relief sought, damages, the tactics of insurance defense attorneys, attorney's fees, and the use of an early mediation/settlement conference to resolve the matter.

Attached to the letter was a settlement agreement defendants were asked to sign. As a postscript, the letter included the bold-type warning "Notice: Nothing in this letter should be construed to advise you not to retain legal counsel or dissuade you from so doing" (*id*. at 6).

3

Yates, DREES, and their attorneys, the Frankovich Group, are no strangers to ADA litigation. The Frankovich Group has filed at least 730 ADA complaints in California federal courts (Que Decl. Exh. A). Approximately 292 of them have been filed since 2004. Defendants posit that the complaints were nearly identical and that all of them asked for monetary damages under California's Unruh Act for each time plaintiffs were deterred from returning to the place of business. Of the total number of complaints, plaintiffs do not dispute that 278 of them were filed in the Northern District of California, and that Yates is named as the plaintiff in thirteen of them.

By an order dated March 8, 2005, the Frankovich Group and one of its repeat plaintiffs, Jarek Molski, were declared vexatious litigants by the Central District of California. *Molski v. Mandarin Touch Restaurant*, 359 F. Supp. 2d 924, 934 (C.D. Cal. 2005) (Rafeedie, J.). The defendants in *Molski* received a letter from Frankovich similar to the one received by Belli Deli, purporting to give them friendly advice to settle the action without hiring a lawyer. Since then, they have been subject to a prefiling order under which they must ask permission of that district court before filing any more claims under Title III of the ADA in that district. One of the issues presented is whether a similar prefiling order should be made for our district.

**ANALYSIS**

Defendants move to dismiss plaintiffs' complaint on several grounds. *First*, they argue that plaintiffs' complaint is frivolous and was filed for an improper purpose. They ask that Yates and the Frankovich Group be subject to a prefiling order. *Second*, they argue that DREES lacks organizational standing to sue under the ADA. *Finally*, they argue that this Court should decline to exercise subject-matter jurisdiction over plaintiffs' claims.

**1. IMPROPER PURPOSE.**

Under the All Writs Act, 28 U.S.C. 1651, a district court has the inherent power to issue an injunction against litigants who harass their opponents. *DeLong v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). Pre-filing orders, however, are a drastic remedy and should rarely be filed. *Ibid.* The Ninth Circuit authorizes such orders to be entered provided that (1) the litigant is given an opportunity to oppose the order before it is entered; (2) the district court

4

1  creates an adequate record for review; (3) the district court makes substantive findings as to the
2  frivolous or harassing nature of the litigant's actions; and (4) that the order is narrowly tailored
3  to prevent the abuse identified. *Id*. at 1147–48.

4  First, plaintiffs have been given an opportunity to oppose the entry of a prefiling order.
5  Defendants asked for such relief in their motion to dismiss, and plaintiffs had an adequate
6  opportunity to respond to defendants' arguments in their opposition.

7  Turning to the second factor, plaintiff Yates admits that he has filed thirteen complaints
8  in this district, and the Frankovich Group has filed 278 Title III ADA complaints in the
9  Northern District of California. Defendants have attached a list of all the complaints filed by
10 the Frankovich Group in all California federal courts (Que Decl. Exh. A). Yates was named as
11 a plaintiff in the following eighteen actions in the Northern District of California:

| Case Number | Case Name |
|---|---|
| C 04-04308 BZ | Yates et al. v. Associated Main Street Partners |
| C 04-05087 JCS | Yates et al. v. Nicolai Building et al. |
| C 04-05211 PJH | Yates et al. v. Heller's for Children, Inc. et al. |
| C 05-03610 JL | Yates et al. v. Woodside Office Center LLC et al. |
| C 06-03289 JCS | Jankey et al. v. Ted's Sport Bar & Grill et al. |
| C 06-06577 WHA | Connally et al. v. Sol Food et al. |
| C 06-07917 MMC | Yates et al. v. Napa Valley Casino et al. |
| C 07-00460 WHA | Yates et al. v. Petco Animal Supplies Stores, Inc. |
| C 07-00946 CRB | Yates et al. v. Celia's Restaurants Corporation et al. |
| C 07-01250 WHA | Connally et al. v. USA Smog & Gasoline et al. |
| C 07-01403 MJJ | Yates et al. v. New Tin's Market et al. |
| C 07-01405 WHA | Yates et al. v. Belli Deli et al. |
| C 07-01566 PJH | Yates et al. v. The Cheese Steak Shop Inc. et al. |
| C 07-02100 JSW | Yates et al. v. Foster Freeze Berkeley et al. |
| C 07-02525 MMC | Yates et al. v. D & A Café Inc et al. |
| C 07-02657 JL | Yates et al. v. Winter Properties et al. |
| C 07-03033 EDL | Yates et al. v. El Sombrero et al. |

5

C 07-03326 JCS    Yates et al. v. Bimbo Bakeries USA, Inc. et al.

Yates was a plaintiff in one additional Title III action filed in 2002; he was not represented by the Frankovich Group.

     A pattern emerges from these complaints. Each of them alleges four claims: denial of access under Title III of the ADA, and claims under California Civil Code §§ 51, 52, and 54. All name DREES as a plaintiff, and in a number of them Yates is joined by other individual plaintiffs. The complaints are highly similar except for the names of defendants. Yates or other individual plaintiffs visit the defendants' place of business several times. Yates alleges that he found several violations of the ADA while there. In most of the complaints, Yates reports difficulty finding van-accessible parking. Entrances are also a popular target — sidewalks are too steep, paths of travel are obstructed, and doors require too much pressure to open. Once inside, the counters are too high and the restrooms lack grab bars and sufficient space. All complaints allege that plaintiff suffered injury or humiliation or emotional distress as a result of the experience. A number of the visits to different defendants' places of business occur on the same days, or days very close in time to one another.

     Looking at the extant complaint, however, defendants have not made any showing that Yates never visited Belli Deli. Yates declared that he had visited Belli Deli before his injury and several times afterward (Yates Decl. ¶ 9). Defendants present the declaration of Dong J. Homer, one of the proprietors, who states that he has worked at the deli for a large part of the time that it has been open, and that he does not recall ever seeing Yates until May 2006 (Homer Decl. ¶ 8). At this stage, however, this order must take Yates' allegations as true. Defendants have not shown that Yates did not visit defendants' store. Defendants also do not dispute the existence of architectural barriers; they only contend that they have been fixed.

     The third factor requires the Court to make substantive findings as to the frivolous or harassing nature of the complaints. Plaintiffs and the Frankovich Group have filed a very large number of ADA complaints, and they so admit. Considering the complaints in isolation, they seem to have a sufficient factual basis. Indeed, Yates and ADEES go to great lengths to point out that the architectural barriers are real and do cause harm to Yates and other disabled

6

1    persons. Although many of Yates' visits to various defendants' places of business were close in
2    time to one another, defendants have not cast doubt on the fact that Yates did, in fact, on those
3    dates, go to those businesses. Perhaps it is true that other ADA plaintiffs in tandem with other
4    counsel have a practice of filing similar suits falsely alleging visits to various premises. This
5    record does not warrant such a conclusion, at least so far.

6    Defendants argue that the complaint against them is part of a scheme by Yates, DREES,
7    and the Frankovich Group to extract settlements out of small business owners afraid of racking
8    up large legal bills and damages. Defendants point out that the Frankovich Group has only
9    taken a single case out of over 700 to trial. All others settled. Plaintiffs maintain that their
10   primary concern is promoting access for the disabled and that the settlements required the
11   defendants to fix the access problems. Indeed, Yates himself identifies several instances where
12   he was able to affect remedial changes that promoted access in several places of business
13   without resorting to litigation (Yates Decl. ¶ 7). Plaintiffs also present settlement agreements
14   from six of their other cases. All of them did require defendants to remove barriers, however, in
15   one settlement agreement those changes consisted only of removing a step in an entranceway
16   and fixing a door so that it requires no more than five pounds of pressure to open. Others
17   required more substantial work on parking lots and restrooms (Frankovich Decl. Exh. B). All
18   settlement agreements required a payment ranging from $14,000 to $30,000. In all the
19   agreements in the declaration, defendants were to pay Yates, DREES, and the Frankovich
20   Group jointly. Whether any remedial work was ever done or not is unknown, but this does not
21   allow a conclusive finding that the remedial settlements were shams.

22   Far more troubling is the letter Frankovich sent to defendants and appears to send to all
23   of his targets. The letter appears to be part of the Frankovich Group's practice in litigating Title
24   III complaints. *See Molski*, 349 F. Supp. 2d at 928. The letter informs defendants of
25   "architectural barriers [that] could be addressed/removed within ninety (90) days to one
26   hundred eighty (180) days" (*id*. at 2). Enclosed with the letter is a settlement agreement that
27   plaintiffs ask defendants to sign. Counsel does acknowledge that he will be unable to
28   communicate with defendants directly once they retain counsel, but in the meantime alerts them

7

to "certain issues they should be aware of" such as that the action was filed in federal court and that the complaint seeks injunctive relief, monetary relief, and attorney's fees (*id.* at 2–3). The letter also goes through a lengthy discussion of insurance, stating that an insurer may deny coverage or choose to defend the action on its own, and that insurance may not cover the attorney's fees defendants might be ordered to pay.

The Frankovich Group's letter offers its most pointed advice for defendants deciding whether to retain counsel. It reads (*id.* at 3–4):

> Defense Billing: Once defense attorneys respond to or answer the Complaint, many, rather than attempt to settle the action, embark on a "billing" exercise. Simply put, some defense attorneys want to sufficiently "bill it" before they get realistic about the settlement. This may cost you [defendants] a significant amount of money that could be better spent on the remedial work and settlement of the action. A monthly itemization of services using six minute or 1/10 of an hour increments is a reasonable request. Keep in mind, the more work your attorneys force on us, the more work we must do. In other words, the litigation can become very costly.

Later in the letter, Frankovich reiterates "we do not want to see you waste your money on needless litigation." It goes on to state (*id.* at 4):

> We hope you accept this letter as friendly advice. We find all too often that many defendants are not properly advised as to their position in the litigation, insurance coverage issues, injunctive relief sought, damages, the tactics of insurance defense attorneys, attorney's fees, and the use of an early mediation/settlement conference to resolve the matter.

In essence, the letter tells defendants that while they might want to retain counsel, defense lawyers will not really have their best interests at heart. All the better to simply accept the settlement now without involving lawyers and racking up further bills. Counsel attempts to rescue himself from overreaching with a postscript to the letter that states in bold print "Notice: Nothing in this letter should be construed to advise you not to retain legal counsel or dissuade you from so doing" (*id.* at 5). This caveat was likely added in response to Judge Rafeedie of the Central District of California's criticism of a very similar letter. *Molski*, 359 F. Supp. 2d at 928.

Under ABA Model Rule of Professional Conduct 4.3, "the lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable

8

possibility of being in conflict with the interests of the client." Similarly, Model Code of Professional Responsibility Disciplinary Rule 7-104(A)(2) states that a lawyer shall not "[g]ive advice to a person who is not represented by a lawyer, other than the advice to secure counsel." It is difficult to see how this letter sent to defendants could be anything but giving advice. The letter in essence tells targets that it is in their best interest to settle early, fix the problems, and most importantly, cut a check to Yates, DREES, and the Frankovich Group. It purports to give targets "friendly advice" on how their insurer might handle claims. Especially pernicious is that plaintiffs and the Frankovich Groups appear to target small, mom-and-pop businesses. Even though it has a proviso that the letter is not to be construed as advice not to retain counsel, the letter implies using no uncertain terms that most defense counsel are just interested in billing hours instead of resolving the matter expeditiously.

This is not to say that access to public places for the disabled is not a valid concern. Indeed, Title III of the ADA encourages enforcement by private individuals. Here, however, we have plaintiffs filing multiple suits against small business owners where counsel sends threatening letters to targets couched in terms of "friendly advice" — that they should go ahead and settle the action and not bother retaining counsel because the more work defendants make plaintiffs do, the more it will cost them.

Plaintiffs point out that in *Molski v. Rapazzini Winery*, 400 F. Supp. 2d 1208, 1211 (N.D. Cal. 2005), Judge Trumbull declined to declare Jarek Molski, another in the Frankovich Group's stable of plaintiffs who filed a large number of Title III actions, a vexatious litigant. That decision found that Molski's complaints had a good-faith basis. It did not, however, discuss the actions of the Frankovich Group, including whether counsel sent a letter similar to the one at issue here to the defendants in that action. Accordingly, this order finds that Yates' underlying complaint may have some plausibility, but counsel's letter seems calculated to coerce a settlement and to deter the target from obtaining his or her own counsel.

Fourth, the order must be narrowly tailored to address the harm. Even though plaintiffs have filed a vast number of Title III actions, these actions appear to be plausible, at least on this record. Defendants have not yet shown that these actions are vexatious or filed with an

9

1  improper purpose.  Defendants' request to dismiss this action and make plaintiffs subject to a
2  prefiling order is **DENIED** without prejudice to reconsideration on a better record.  The other
3  evil identified here is the letter sent from the Frankovich Group to defendants.  Judging from the
4  Frankovich Group's boldness in submitting this letter with a declaration, they seem to believe
5  that they have addressed problem identified by Judge Rafeedie in *Molski*.  They are wrong.
6  Accordingly, the Clerk will send a copy of this order to the State Bar of California for its
7  consideration.

### 2. DREES' ORGANIZATIONAL STANDING.

Defendants argue that DREES should be dismissed from this action because they lack organizational standing.  An organization may sue on its members' behalf if:  (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) the participation of individual members in the lawsuit is not required.  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

Here, since DREES asserts the same claims as Yates, DREES would not have standing to sue if Yates did not have standing.  As to the second requirement, DREES identifies its interests as "promoting, providing and advocating disability rights, education, independent living, enforcement and services which help provide assistance to persons with disabilities . . ." and providing advocacy services such as pursuing enforcement of federal and state laws (Connally Decl. ¶¶ 3–4).  As to the third requirement, an individual plaintiffs' participation is not necessary to get the relief requested by plaintiffs in this action.  The claims turn on the presence of architectural barriers, proof of which does not require testimony of any individual plaintiff.  Accordingly, plaintiffs have shown that DREES is entitled to organizational standing.  Defendants' motion to dismiss claims by DREES is **DENIED**.

### 3. SUBJECT-MATTER JURISDICTION.

Defendants also assert that plaintiffs' state-law claims should be dismissed for lack of subject-matter jurisdiction.  The exercise of supplemental jurisdiction over state-law claims is appropriate where the claims in an action "derive from a common nucleus of operative fact" and

10

are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 725 (1966). A federal district court may decline to exercise supplemental jurisdiction over related claims if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. 1367(c).

Both plaintiffs' federal and state-law claims arise out of the same common nucleus of operative facts. Common to all claims is that Yates visited Belli Deli and found architectural barriers that impaired his access to the property. Since all claims arise out of same facts, a plaintiff such as Yates would expect to try all of them at once.

Defendants first argue that this action raises a novel or complex issue of state law because there is no controlling case law on the calculation of damages under the Unruh Act and the California Disabled Persons Act. Courts are split on whether daily damages are permitted in interpreting the phrases "for each and every offense" and "for each offense." Defendants also argue that since damages are available for the state claims, and not for the federal claims, that the state-law claims predominate. Taking plaintiffs at their word, however, they claim to be working for injunctive relief and fixing architectural barriers. Finally, defendants argue that convenience and fairness favor trying these claims in state court. None of these arguments wins the day. These claims clearly involve the same facts. It would be inefficient to try the claims separately, so the exercise of supplemental jurisdiction is appropriate. Defendants' motion to dismiss for lack of subject-matter jurisdiction is **DENIED**.

\*       \*       \*

In their reply brief, defendants present evidence that this action is now moot because they have made all of the changes requested by plaintiffs. Defendants' arguments will not be addressed at this stage. Considering evidence that the requested changes have been made would convert this motion into summary judgment, which is most inappropriate particularly when

11

these arguments first surfaced in a reply brief. This evidence, however, may be suited for an early summary-judgment motion.

## CONCLUSION

For all of the above-stated reasons, defendants' motion to dismiss is **DENIED**. The Clerk shall forward a copy of this order to State Bar of California for the purpose of investigating the Frankovich Group's actions.

**IT IS SO ORDERED.**

Dated: August 13, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE